David Tewell, David Menz
TEWELL & FINDLAY
900 Fourth Avenue, Suite 1144
Seattle, WA 98164-1011
Phone: (206) 623-2369

Attorneys for Defendant
United National Insurance Company

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 30 2001

JAMES R. LARSEN, CLERK

_____ DEPUTY
SPOKANE, WASHINGTON

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

10
11
12

CITY OF SPOKANE, a municipal
corporation,
                         Plaintiff,

    v.

13
14
15
16
17
18

UNITED NATIONAL INSURANCE
COMPANY, a foreign corporation;
LEXINGTON INSURANCE COMPANY,
a foreign corporation; and GENESIS
INSURANCE COMPANY, a foreign
corporation,
                         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. CS-01-0069-WFN

UNITED NATIONAL'S
MOTION FOR SUMMARY
JUDGMENT AND
STATEMENT OF FACTS

19
20

## I. RELIEF REQUESTED

21
22

In this insurance coverage dispute, defendant United National Insurance

23
24

Company ("United National") requests an order of summary judgment dismissing

25
26

plaintiff City of Spokane's ("City") complaint against United National on the basis

27

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 1

ORIGINAL

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Bldg.
900 Fourth Avenue
Seattle, WA 98164-1011
Phone (206) 623-2369

that there is no insurance coverage as a matter of law.

## II. SUMMARY OF FACTS AND ARGUMENT

The City owned a compost facility which at times produced foul odors. Homeowners experiencing chronic foul odors sued the City. The City asked United National and other insurers to indemnify it against the homeowners' claims. United National and the other insurer defendants denied coverage based on the pollution exclusion and other contractual coverage limitations. The City settled the homeowners' claims by buying *fifteen* homes, purchasing "Odor Easements," and paying additional cash. In this action, the City sues insurers who denied coverage, claiming that their pollution exclusion clauses are ambiguous and provide coverage.

Washington appellate courts recently upheld nearly identical pollution exclusion language as a bar to coverage of nearly identical homeowner claims against governmental entities responsible for waste treatment plants which produced odors.

The material facts are undisputed. Interpretation of the absolute pollution exclusion is a matter of law. The City's claim against United National should be

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 2

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

dismissed because the pollution exclusion excludes coverage for claims arising from the contamination of the atmosphere by the gaseous odorous irritants emitted from the City's compost facility.

### III. STATEMENT OF FACTS

For purposes of this summary judgment motion only, United National treats the following as undisputed facts.

1.      In December 1992, the City of Spokane, through its arm, the Spokane Regional Solid Waste Disposal Project, applied to the Spokane County Air Pollution Control Authority (hereinafter "SCAPCA") for approval to develop the Colbert Compost Facility with capability of producing 70,000 tons of compost per year.  See Exhibit 1 to Declaration of David Menz  (all exhibits are attached to the Declaration of Menz, unless otherwise noted).

2.      SCAPCA's regulations mirror the Washington Clean Air Act and apply to the compost facility.  See Exhibit 2.  The regulations indicate that SCAPCA is the local authority with jurisdiction to enforce the Washington Clean Air Act (Sec. 1.01); that commercial and municipal composting operations are regulated by

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

SCAPCA as an "air contaminant source" (para. 16 of Exh. R to Sec. 4.01).  The

regulations, at Sec. 1.04, define terms as follows:

C. <u>Air Contaminant</u> means dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substance or any combination thereof. "Air pollutant" means the same as "air contaminant."

D. <u>Air Pollution</u> means the presence in the outdoor atmosphere of one or more air contaminants in sufficient quantities and of such characteristics and duration as is, or is likely to be, injurious to human health, plant or animal life, or property; or which unreasonably interferes with enjoyment of life and property.

Section 6.04, "Odors and Nuisances," reads:

A. Effective control apparatus and measures shall be installed and operated to reduce **odor-bearing gases** and particulate matter emitted into the atmosphere to a reasonable minimum [emphasis added].

Section 6.06, "Emission of Air Contaminants or Water Vapor, Detriment To

Persons or Property," reads:

It shall be unlawful for any person to cause or permit the emission of an air contaminant or water vapor . . . if the air contaminant or water vapor causes detriment to the health, safety, or welfare of any person or causes damage to property or business.

3. Prior to the opening of the compost facility, the Spokane County

Zoning Adjustor *denied* the City's application for a Conditional Use Permit, as

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 4

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

recorded in his Findings of Fact, Conclusions and Decision, dated January 4, 1993. Exhibit 3. The Findings of Fact explain that the site of the compost facility was zoned General Agricultural (see page 2, para. 4); that the adjacent neighborhood to the west (where the Walmsley plaintiffs lived) was zoned SRR-5 (semi-rural residential, 5-acre lots) (see page 2, para. 3, and page 3, para. 6.a.); that SRR-5 zoning prohibits commercial composting (see page 4, first two lines, and at para. 7); that odor control would be a problem (page 5, middle paragraph); and that "*If management techniques are not fully successful, there will be clearly unavoidable, adverse impacts to the nearby residential areas.*" (*Id.*).

4.     Four months later, in April 1993, the zoning board approved the Waste System's (City's) application for conditional use permit, conditioned upon the City mitigating compost odor problems. See Exhibit 4, at "Conditions," 10.

5.     Around June 1993, the City and Spokane County ("County") together contracted with O.M. Scott & Sons Company regarding development of the compost facility. See City's Complaint For Declaratory Relief (hereinafter "Complaint"), paragraph 3.3, attached as Exhibit 5 to Declaration of David Menz.

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 5

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

(*N.B.:* Exhibit 5, the Complaint, was filed by plaintiff with several exhibits of its own, including "Exhibit 4" which is a document entitled "Contract." The Contract, in turn, has its own Exhibits A through G).

6.    The City anticipated the presence of odors. See Contract ("Exhibit 4" to the Complaint, Exhibit 5), page 1, para. 3., "Definitions," sub-part B. "Compost", which states: "*Compost – a well decomposed, humus-like, material derived from the aerobic decomposition of organic plant matter. The compost shall have an earthy odor, . .*"

7.    The City agreed to comply with all applicable laws in the performance of its duties, "*including, but not limited to, those regarding noise, dust, air quality, water quality, odor . . .*" Contract, page 5, para. 11 (emphasis added).

8.    The City contemplated the need for air quality control measures, recognizing the potential for related nuisance, health and safety problems.

> Operation of the facility must ensure that yard debris is only stored as specified. Storage is only acceptable to the extent that satisfactory odor, vector, dust, and fire control measures are employed to address nuisance, health, and safety problems.

Contract, at page 14, "Exhibit B, Facility Operation Requirements," para. C.

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 6

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

9.    The City intended that waste be collected at the facility in the form of "wood waste" and "yard debris,"  Contract, page 1–2, para. 3.A., 3.E., 3.F, and to be able to process 200 tons of this material per day, seven days per week.  Contract, at page 14, "Exhibit B," para. B; and Contract, page 3, para. 5.B.

10.    The City contemplated that at the facility there would be occasional unacceptable waste material in the form of "*reject and residue materials going to the waste to energy plant or other disposal facility.*"  Contract, page 3, para. 6.E.

11.    The City contemplated the potential escape of waste to the air beyond the facility:

> Adequate fencing, landscaping, and barriers must be provided to ensure that <u>blowing debris and waste</u> are confined to the Site and to provide visual screening of operations from roadways and neighboring properties.

Contract, page 19, "Exhibit D," "Facility Design Requirements," para. C (emphasis added).

12.    On August 18, 1993, and for every full year period thereafter, the Spokane County Health District (later called the Spokane *Regional* Health District) issued the required Solid Waste Disposal Site Permit for the compost facility, in

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 7

**TEWELL & FINDLAY**
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA  98164-1011
Phone: (206) 623-2369

substantially identical form each year.   Exhibit 6.   The Permit has a Special

Condition which states:

> S2. Performance Standards
> (B) The permittee shall not cause a violation of any ambient air quality standard at the property boundary or emission standard from any emission of **composting gases**, combustion or any other emission associated with such a facility.

*Id.*, at page 2 (emphasis added).  The permit's General Condition G20 states:

> In the event the permittee is unable to comply with any of the conditions of this permit due to any cause, the permittee shall:  (A) Immediately take action to stop, contain and clean up any unauthorized discharges or spills and correct the problem.

*Id.*, at page 8.

13.     The City designed, constructed and owned the compost facility.   See

Contract ("Exhibit 4" to Complaint, Exhibit 5), at page 3, para. 6.A., 6.D.

14.     The compost facility opened in November 1993.   Complaint, para. 3.3.

15.     Within two weeks of the opening of the compost facility in November

1993, nearby residents detected irritating odors migrating off-site.  Exhibit 7.

16.     SCAPCA's files for the compost facility contain a 1991 document

prepared by a King County compost facility for Puget Sound Air Pollution Control

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

Authority, and entitled "Best Management Practices To Minimize Air Emissions."

Exhibit 8.  At page 3, it defines a source of offensive odors as follows:

> 1. Anaerobic occlusions or pockets within the raw feedstock that begin
> to ferment.  These conditions are believed to be caused by a build-up of
> volatile organic acids.  These include but are not limited to benzoic,
> acetic, butyric, formic, lactic, and propionic acids.  All of these carry
> odors which can be described as pungent, rancid, or vinegar-like.  This
> acidic and anaerobic condition can also volatilize ammonia which would
> otherwise remain in an inorganic or oxidized state.

17.    Four of SCAPCA's Air Quality Specialists wrote a July 15, 1994
memo documenting composting odors rising to the level of air pollution violations
on four different dates in 1994.  Exhibit 9.  They wrote:  "*Action is required to
correct this problem.  A Notice of Violation is highly recommended as a tool to
resolve the problem.*"

18.    In August 1994, the compost facility considered 14 different possible
odor mitigation techniques to control the offensive odors.  Exhibit 10.  The list of
odor mitigation possibilities mentions: "*Staggered turning of windrows so they
don't all **off-gas** at once.*" (Emphasis added).

19.    In August 1994, the Spokane City Council quoted Phil Williams,

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union  Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

director of the Spokane Regional Solid *Waste System* (the City's newer designation

for its department in charge of the compost facility), as saying that "*a problem does*

*exist in that more odor is emanating from the site than ever expected.*" Exhibit 11.

20.    SCAPCA director Eric Skelton, in an August 19, 1994 memo,

documented the presence of "rotting" odors and five windrows which were not

decomposing properly. Exhibit 12.

21.    SCAPCA Air Quality Specialist Joe Southwell wrote a September 6,

1994 memo documenting sour ammonia smells migrating off-site from the compost

facility. Exhibit 13.

22.    SCAPCA director Eric Skelton, in a September 14, 1994 memo,

documented the presence of sour offensive odors which were not what would be

expected from compost and which probably rose above a reasonable minimum.

Exhibit 14.

23.    At the September 1994 meeting of the Spokane City Council, several

agency and corporate leaders, including Eric Skelton, director of SCAPCA, gave

reports "*regarding the problem of odor emanating from the compost facility,*"

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

following which the City voted to give the company handling the compost operations just 30 days to be "*in compliance of their contract*" or to vacate the facility and remove all compost.  Exhibit 15.

24.   Phil Williams, the City's director of the Solid Waste System (compost facility) wrote a letter dated September 15, 1994 to the North Glen residents (where the Walmsley plaintiffs resided) stating:  "*They have been working very hard in the past few weeks to correct the causes of the odor problem, and we feel that it is greatly improved.  It is still not good enough . . . the contractor must get the odors under control.*"  Exhibit 16.

25.   SCAPCA director Eric Skelton wrote a March 29, 1995 memo stating:

Have the odors unreasonably interfered with the use and enjoyment of property?  Clearly, the answer is **yes**.  . . . [T]here is little doubt that the odors have frequently been strong enough to force people indoors and disturb their sleep.

. . .

Have the odors been reduced to a reasonable minimum?  The answer is **probably not.**

Exhibit 17. (Emphasis in original).

26.   SCAPCA director Eric Skelton wrote a July 28, 1995 memo to the

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

SCAPCA Board explaining the conundrum of how a regulatory agency should treat foul odors, but admitting:

> There is no question but there were times in 1994 when anaerobic conditions set in and odors from the facility unreasonably interfered with the use and enjoyment of property.
> . . .
> On or about the Memorial Day weekend in 1995, the character of the odors changed to the rotten, ammonia-like odor, characteristic of anaerobic conditions. . . . A violation notice was issued, based on one night's odors that clearly interfered with the use and enjoyment of property.
> . . .
> Representing Scott was their composting expert, Tim Crumm.  He readily admitted that the odors had become unacceptable.

Exhibit 18.

27.    SCAPCA director Eric Skelton wrote a July 31, 1995 letter to the Spokane County Commissioners explaining his the view that the compost facility was not necessarily in routine violation of the air pollution laws, but then explaining:

> However, you have 1500 complaints, attesting to an **odor problem**. The test of an **odor problem** must be a less stringent test than the one for an **odor violation** because something can be a problem without becoming a violation. [Emphases in original].

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 12

**TEWELL & FINDLAY**
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

Exhibit 19.

28.    The Washington State Department of Health produced a "Compost Facility Health Study" in January 1996. Exhibit 20. It documented numerous health complaints allegedly resulting from the compost odor emissions. *Id.*, at Tables 3 and 4. They include eye irritation, stuffy/runny nose, sore throat, nausea, headache and others. *Id.* While the study resisted drawing hard conclusions about the odors causing health problems, its conclusion stated:

> . . . However, it is evident from many of the comments that were listed on the survey forms that respondents felt odors were making them sick.

> Odor problems have a considerable impact on quality of life. If the residents are exposed to a malodorous environment for the majority of the time in a given month, their quality of life is, indeed, affected. The continual presence of an odor in the community suggests the need for a closer examination of the operations at these facilities. Odors can be effectively managed so they have a minimal impact on the community. These odors have not been eliminated after months of attention to this problem, and currently have an adverse effect on the quality of life of the residents in the surrounding communities.

*Id.*, at page 5 (emphasis added).

29.    SCAPCA's records contain a Cornell University document explaining how compost operations can release gaseous ammonia and other odorous

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 13

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

compounds under certain pH conditions.  Exhibit 21.

30.    The SCAPCA files contain an August 11, 1999 article from the Spokesman Review quoting one of the underlying plaintiffs, Alice Walmsley, as saying, "*We had no choice* [but to move away].  *Ammonia from the compost plant burned my lungs.*"  Exhibit 22.

31.    The Spokane Regional Solid Waste System, the City's department responsible for the compost facility, submitted its 1999 required annual report, page 24 of which shows that the compost facility received an average of over 20,000 tons of waste material per year for composting.  Exhibit 23.

32.    As recently as July 6, 2001, the compost facility, even under new management, and using new methods which keep the compost inside "Ag-Bags," was *still* producing foul odors off-site, as SCAPCA director Eric Skelton explained following his own inspection:  "*The most pervasive odor was what I would characterize as a vomit odor . . .*".  Exhibit 24.

33.    In 1997, residents of the neighboring properties west of the compost facility sued the City for tainting their air.  *See* plaintiffs Walmsley, et al.'s

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 14

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

Complaint (hereinafter "Walmsley Complaint"), at para. 3.6.   The Walmsley

Complaint is "Exhibit 5" to the Complaint which is Exhibit 5 to the Decl. of Menz.

34.   The Walmsley, et al. plaintiffs complained:

The Colbert Compost Facility emits foul, offensive, noxious, and otherwise unreasonable odors which has and continues to cause injury to plaintiffs and their properties.   The unlawful odor emitted from the Colbert Compost Facility first occurred at the time that the facility commenced operation and has continued and will continue during the entire course of its operation until the unreasonable odor is fully abated and corrected.

Walmsley Complaint, para. 3.3 (emphasis added).

35.   The Walmsley, et al. plaintiffs asserted four causes of action arising

from the emission of the odors from the facility.   They claimed that the odors

constituted a nuisance (para. 4.2 of Walmsley Complaint), and a trespass amounting

to an invasion (para. 4.4 of Walmsley Complaint).   They claimed the City was

negligent for allowing release of odors (para. 4.7 of Walmsley Complaint).   They

claimed the emission of odors constituted a taking by inverse condemnation

without compensation (para. 4.9 of Walmsley Complaint).

36.   The Walmsley, et al. plaintiffs sought monetary damages resulting

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 15

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

from the emission of the odors (para. 5.2 of Walmsley Complaint), and an order enjoining the operation of the compost facility in order to fully abate the emission of the odors (para. 5.3 of Walmsley Complaint).

37.    The Walmsley, et al. plaintiffs claimed that they are entitled to damages because the noxious and unlawful odors invaded their property, caused a decrease in the value of their property, interfered with the use and enjoyment of their property, and inflicted emotional distress on them.    Walmsley Complaint, para. 5.2.

38.    The City admits that "*all of the claimed damages and injuries suffered by the plaintiffs in the Walmsley litigation arose out of odors emitted from the Colbert Compost Facility.*"    Exhibit 25 (plaintiff City's response to defendant Lexington's Request For Admission No. 2).

39.    In addition, "*The City admits that some plaintiffs alleged that odors from the Colbert Compost Facility caused eye irritations . . .*".    Exhibit 25 (plaintiff City's response to defendant Lexington's Request For Admission No. 12).

40.    Around August 4, 1999 the City entered into a Settlement Agreement

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 16

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA  98164-1011
Phone: (206) 623-2369

and Release with the Walmsley, et al. plaintiffs.   Exhibit 25 (the agreement is attached to Lexington's Request For Admission No. 13).

41.   One of the primary features of this agreement was the City's purchase of a majority of the Walmsley plaintiffs' homes.  *Id.*  The City agreed to buy out fifteen homes in the area affected by odors, at a cost of $3,151,000, (an average of over $210,000 per home).  *Id.*

42.   In addition, the City agreed to purchase the right to taint the air with odors over and around seven homes, at an average cost of about $15,000 per "odor easement."  *Id.*

43.   The odor easements state:

Grantor hereby reserves to itself . . . **an easement to invade**, go upon, over and across the land . . . and the airspace above said land, including without limitation the space within any structures upon said land, **by means of any and all odors or physical airborne particles of any kind, including but not limited to dust,** which may now or may hereafter (**hereinafter referenced as "odors"**), directly or indirectly, arise out of . . . waste composting . . .

Exhibit 26.

44.   United National issued a special excess liability insurance policy to the

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

City for the policy period July 7, 1993 to July 7, 1994. See Certified Copy of Policy, Exhibit 27 (hereinafter the "Policy").

45.    In July 1998, over a year and a half after the Walmsley plaintiffs made claims against the City, the City wrote to United National to put it on notice of the claims. Complaint (Exhibit 5), para. 4.1.

46.    In October 1998, United National wrote to the City to put it on notice that United National felt that the Walmsley claims may not be covered as a result of various clauses, exclusions, and definitions in the Policy. Complaint, para. 4.9.

47.    In April 1999, United National denied coverage for the Walmsley claims, citing the Policy's pollution exclusion (K), inverse condemnation claim exclusion (G), and the lack of coverage for claims for injunctive relief. Exhibit 28. The denial letter states that United National reserved the right to show that additional policy language may bar coverage. *Id.*

48.    The Policy states:

## EXCLUSIONS

This policy does not apply:

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

. . . .

(G)  To claims for loss or damage or any liability arising out of or in connection with the principles of eminent domain, condemnation proceedings or inverse condemnation by whatever name regardless of whether such claims are made directly against the Insured or by virtue of any agreement entered into by or on behalf of the Insured.

. . . .

(K)  To any liability for pollution:

    (1)  The contamination of any environment by pollutants that are introduced at any time, anywhere, in anyway;

    (2)  Any personal injury, property damage, public officials errors and omissions liability, costs, or other loss or damage arising out of such contamination, including but not limited to, cleaning up, remedying or detoxifying such contamination; or

    (3)  Payment of sums related to (a) the investigation or defense of any loss, injury or damage or (b) payment of any cost, fine or penalty or (c) payment of any expense involving a claim or suit to K(1) or K(2) above.

Exhibit 27.  The following terms are defined in the Policy:

## DEFINITIONS

"POLLUTANTS" means smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal pollutants, and all other irritants or contaminants, including wastes. Wastes include materials to be recycled, reconditioned or recleaned.

"ENVIRONMENT" includes any . . . air and any other feature of the earth or its atmosphere . . .

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

"<u>CONTAMINATION</u>" means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants, whether permanent or transient in any environment.

*Id.*

49.    Webster's Ninth New Collegiate Dictionary provides definitions for fumes, vapors, and gases:

**fume**  *n*  **1 a:** a smoke, vapor, or gas, esp. when irritating or offensive <engine exhaust ~s>  **b:** an often noxious suspension of particles in a gas (as air).

**gas**  *n*  **1:** a fluid (as air) that has neither independent shape nor volume but tends to expand indefinitely  **2**  **a:** a gas or gaseous mixture with the exception of atmospheric air: as (1) : a gas or gaseous mixture used to produce anesthesia  (2) : a combustible gaseous mixture (as for fuel)  **b:** a substance that can be used to produce a poisonous, asphyxiating, or irritant atmosphere.

**vapor**  *n*  **1:** diffused matter (as smoke or fog) suspended floating in the air and impairing its transparency  **2**  **a:** a substance in the gaseous state as distinguished from the liquid or solid state.

Exhibit 29.

50.    The City claims that United National's denial of coverage was a breach of the contract of insurance.  Complaint, para. 8.2.  In support of its claim of breach, the City alleges:

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 20

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

- that the Walmsley plaintiffs never alleged "contamination" (Complaint, para. 4.18),

- that the compost facility did not "contaminate" the Walmsley plaintiffs' property (Complaint, para. 4.19),

- that the compost facility does not release "pollutants" (Complaint, para. 4.21),

- and that the definition of "Pollutants" in the Policy is inherently ambiguous (Complaint, para. 4.20).

## IV. ISSUES PRESENTED

Are the Walmsley claims excluded from coverage by the pollution exclusion of the Policy where they allege damage from contamination of their atmosphere by the introduction of odorous irritants, i.e., traditional environmental pollution?

## V. EVIDENCE RELIED UPON

Declaration of David Menz, with the following attached Exhibits:

1.    City's 1992 Waste Project Application to SCAPCA.

2.    SCAPCA regulations.

3.    County Zoning Adjuster's 1-4-93 denial of Cond'l Use Permit.

4.    Zoning Board's 4-21-93 approval of Conditional Use Permit.

5.    Plaintiff City of Spokane's <u>Complaint</u>, with its own Exhibits:

    1. United National Insurance Company Excess Liability Policy

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 21

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

    2. Lexington Insurance Company Excess Liability Policy
    3. Genesis Insurance Company Public Entity Policy
    4. Contract (for the compost facility), with the following 4 exhibits:
        A. Legal Description
        B. Facility Operation Requirements
        C. Processing and Finished Product Standards
        D. Facility Design Requirements
    5. Underlying Complaint of *Walmsley, et al. v. City, et al.*

6.    Solid Waste Permits issued by County Health Department.

7.    SCAPCA memo dated 1-14-94 re: odor complaints.

8.    "Best Management Practices To Minimize Air Emissions."

9.    SCAPCA memo dated 7-15-94 re: odor pollution.

10.    SCAPCA memo dated 8-2-94 re: odor control practices.

11.    Spokane City Council Action Memorandum, 8-24-94.

12.    SCAPCA (Eric Skelton) memo dated 8-19-94 re: bad compost.

13.    SCAPCA (Joe Southwell) memo dated 9-6-94 re: odor.

14.    SCAPCA (Eric Skelton) memo dated 9-14-94 re: bad odors.

15.    Spokane City Council Action Memorandum, 9-20-94.

16.    City Solid Waste System's Phil William's 9-15-94 letter to residents.

17.    SCAPCA (Eric Skelton) memo to SCAPCA Board, dated 3-29-95.

18.    SCAPCA (Eric Skelton) memo to SCAPCA Board, dated 7-28-95.

19.    SCAPCA (Eric Skelton) letter to County Commissioners, 7-31-95.

20.    Spokane Compost Health Study by State Department of Health.

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 22

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

21. Cornell Univ., Dept. of Agricultural Engineering composting report.

22. Spokesman Review article dated 8-11-99.

23. Spokane Regional Solid Waste System 1999 Annual Report.

24. SCAPCA (Eric Skelton) memo dated 7-6-01 re: vomit odor.

25. Lexington's Requests For Admission; City's Answers.

26. The City's Odor Easements.

27. Certified Copy of United National Policy of Insurance.

28. April 19, 1999 letter from Tewell to Sloane denying coverage.

29. Dictionary definitions for gases, fumes, vapors.


RESPECTFULLY SUBMITTED this ___ day of November, 2001.

TEWELL & FINDLAY

By: _____
DAVID TEWELL, WSBA # 9000
DAVID MENZ, WSBA # 19993
Attorneys for United National Insurance Company

1392-2 \ pleading \ sj-FACTS.doc

UNITED NATIONAL'S STATEMENT OF FACTS
FOR SUMMARY JUDGMENT - 23

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Building
900 Fourth Avenue
Seattle, WA 98164-1011
Phone: (206) 623-2369

## DECLARATION OF SERVICE

I am employed by Tewell & Findlay in the county of King, State of Washington. I am over the age of 21 and not a party to the within action.

On this day I served a copy of: United National's Motion for Summary Judgment

upon the court and all counsel, by placing copies thereof in postage prepaid envelopes and mailing the same via Federal Express to the court and to the following:

Grant S. Degginger
Lane Powell Spears & Lubersky
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101

*PNP Legal Messenger*

Richard C. Robinson
Lee, Smart, Cook, Martin & Patterson
1800 One Convention Place
701 Pike Street
Seattle, WA 98101-3929

*PNP Legal Messenger*

Thomas R. Luciani
Stamper, Rubens, Stocker & Smith
W. 720 Boone #200
Spokane, WA 99201

*Federal Express*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 24th day of November, 2001.

KATHLEEN RONEY

13922\pldg-decl servc

DECLARATION OF SERVICE - 24

TEWELL & FINDLAY
ATTORNEYS AT LAW
1144 Union Bank of California Bldg.
900 Fourth Avenue
Seattle, WA 98164-1011
Phone (206) 623-2369